| | | |
|---|---|---|
| **ROBERT BUTTRUM AND** | ) | |
| **MICHAEL HILL** | ) | |
| | ) | |
| **PLAINTIFFS,** | ) | **Civil Action No. _____** |
| | ) | **Jury Demand** |
| **v.** | ) | |
| | ) | |
| **COOKEVILLE REGIONAL** | ) | |
| **MEDICAL CENTER AUTHORITY** | ) | |
| **d/b/a/ COOKEVILLE REGIONAL** | ) | |
| **MEDICAL CENTER,** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## COMPLAINT

All allegations in this complaint are based upon information and belief.

1. Plaintiffs institute this action against Defendant alleging that by failing to provide Plaintiffs with effective communication, Defendant discriminated against both Plaintiffs solely by reason of Plaintiffs' disability in violation of Title II of the Americans with Disabilities Act (hereinafter referred to as "ADA"), 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 (hereinafter referred to as "Section 504"), 29 U.S.C. § 794, and their implementing regulations.

2. Plaintiffs allege that Defendant's failure to promptly provide Plaintiffs with a qualified sign language interpreter constitutes discrimination against Plaintiffs solely by reason of Plaintiffs' disabilities in violation of the ADA and Section 504 and their implementing regulations.

3. Plaintiffs allege that Defendant's failure to consistently provide Plaintiffs with a qualified sign language interpreter constitutes discrimination against Plaintiffs solely on the basis

1

of Plaintiffs' disabilities in violation of the ADA and Section 504 and their implementing regulations.

4.    Plaintiffs allege that Defendant discriminated against Plaintiffs solely by reason of Plaintiffs' disabilities in violation of the ADA and Section 504 and their implementing regulations by failing to have an established procedure for providing effective communication to Plaintiffs and other deaf persons seeking medical treatment.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504.

6.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that the claim arose in the Middle District of Tennessee and the Defendant conducts business in the Middle District of Tennessee.

## PARTIES

7.    Plaintiff Robert Buttrum (hereinafter, "Plaintiff Buttrum") is a resident of Cookeville, Tennessee which is in Putnam County.

8.    Plaintiff Michael Hill (hereinafter, "Plaintiff Hill") is a resident of Cookeville, Tennessee which is in Putnam County.

9.    Upon information and belief, Defendant Cookeville Regional Medical Center Authority (hereinafter referred to as "Defendant") is a public and governmental body established by a Private Act of the State of Tennessee legislature under T.C.A. § 7-57-102 and does business in Tennessee with its principal office at 1 Medical Center Boulevard, Cookeville, Tennessee 38501-4294.

2

10. Upon information and belief, Defendant has sole and complete authority to operate and control the facilities of the Cookeville Regional Medical Center (hereinafter "CRMC").

11. Defendant owns, controls, and/or operates CRMC which is a hospital facility located in Cookeville, Tennessee.

12. Defendant is located in Cookeville, Tennessee in Putnam County.

13. Defendant is principally engaged in the business of providing health care.

14. Defendant is a recipient of federal funds.

15. Defendant participates in Medicare.

16. Defendant participates in Medicaid.

17. Defendant employs more than fifteen persons.

FACTS

18. Plaintiff Buttrum is deaf.

19. Plaintiff Buttrum's deafness is a physical impairment which limits the major life activity of hearing.

20. Plaintiff Buttrum's deafness is a physical impairment which limits the major life activity of speaking.

21. Plaintiff Buttrum's deafness is a physical impairment which limits the major life activity of receptive and expressive spoken communication.

22. Plaintiff Buttrum communicates primarily through American Sign Language (hereinafter "sign language").

23. Plaintiff Buttrum requires the services of a qualified sign language interpreter to effectively communicate about complex information.

24. Plaintiff Buttrum requires the services of a qualified sign language interpreter to effectively communicate about lengthy information.

3

25.   Plaintiff Buttrum requires the services of a qualified sign language interpreter to effectively communicate about his health.

26.   Plaintiff Buttrum requires the services of a qualified sign language interpreter to effectively communicate about his medical treatment.

27.   Plaintiff Hill is deaf.

28.   Plaintiff Hill's deafness is a physical impairment which limits the major life activity of hearing.

29.   Plaintiff Hill's deafness is a physical impairment which limits the major life activity of speaking.

30.   Plaintiff Hill's deafness is a physical impairment which limits the major life activity of receptive and expressive spoken communication.

31.   Plaintiff Hill communicates primarily through sign language.

32.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about complex information.

33.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about lengthy information.

34.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about his health.

35.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about his medical treatment.

36.   Plaintiff Hill is a companion of Plaintiff Buttrum who assists Plaintiff Buttrum with his health needs.

37.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about Plaintiff Buttrum's health.

38.   Plaintiff Hill requires the services of a qualified sign language interpreter to effectively communicate about Plaintiff Buttrum's medical treatment.

39.   Plaintiff Hill accompanied Plaintiff Buttrum to all hospital admissions, emergency room visits, treatments, medical appointments, etc. referenced in this Complaint.

40.   On or about November 7, 2012 (hereinafter "November 2012 visit"), Plaintiff Buttrum went to the CRMC Emergency Department.

41.   During the November 2012 visit, CMRC failed to provide Plaintiffs with a qualified sign language interpreter to discuss Plaintiff Buttrum's medical history, medications, diagnosis, course of treatment, and discharge.

42.   CRMC records for the November 2012 visit note, "Could not get any proper history at this time because of poor communication."

43.   CRMC records for the November 2012 visit note, "We are attempting to obtain a current medication list from his pharmacy.  The nurses [sic] staff are working on getting an accurate list at this time.  We attempted to review the list with the patient, but he was unable to provide that history.  Pharmacy is being contacted."

44.   On or about December 31, 2012, Plaintiff Buttrum was admitted to CRMC and was discharged on or about January 7, 2013 (hereinafter "December 2012 admission").

45.   During the December 2012 admission, CRMC failed to provide Plaintiffs with a qualified sign language interpreter to explain why Plaintiff Buttrum was being admitted to the hospital, including Plaintiff Buttrum's medical history, medications, diagnosis, prognosis, course of treatment and discharge.

46. Plaintiff Buttrum has been to CRMC Emergency Room multiple times since the December 2012 admission.

47. During the December 2012 admission, Plaintiff Buttrum requested CRMC provide him with a sign language interpreter.

48. During the December 2012 admission, CRMC failed to provide Plaintiffs with effective communication to explain Plaintiff Buttrum's course of medical treatment, including any medical tests that were administered and any medications that were given.

49. During the December 2012 admission, CRMC failed to consistently provide Plaintiffs with a qualified sign language interpreter to review and explain medical instructions.

50. During the December 2012 admission, CRMC failed to timely respond to Plaintiff Buttrum when he pressed the call button.

51. During the December 2012 admission, Plaintiff Buttrum urinated on his bed and the floor because CRMC failed to timely respond to Plaintiff Buttrum's use of the call button.

52. During the December 2012 admission, blood from Plaintiff Buttrum's IV leaked onto Plaintiff Buttrum because CRMC failed to timely respond to Plaintiff Buttrum's use of the call button.

53. Throughout the December 2012 admission and ongoing since that time, CMRC failed to have an appropriate procedure in place for responding to use of the call button by a patient who is deaf.

54. Throughout the December 2012 admission and ongoing since that time, Plaintiff Buttrum has repeatedly requested that CRMC provide Plaintiff Buttrum with an interpreter so Plaintiff Buttrum can understand his medical treatment.

55. Throughout the December 2012 admission and ongoing since that time, Plaintiff Buttrum has repeatedly requested CRMC provide Plaintiff Buttrum with an interpreter so Plaintiff Buttrum can effectively communicate with CRMC health care providers and vice versa.

56. Throughout the December 2012 admission, CRMC failed to respond to Plaintiff Buttrum's requests for an in person qualified sign language interpreter.

57. Throughout the December 2012 admission and ongoing since that time, CRMC has failed to consistently provide Plaintiff Buttrum with effective communication.

58. Throughout the December 2012 admission and ongoing since that time, CRMC has failed to consistently provide Plaintiff Buttrum with a qualified sign language interpreter.

59. Throughout the December 2012 admission and ongoing since that time, CRMC has failed to consistently provide effective communication to Plaintiff Hill about Plaintiff Buttrum's medical treatment.

60. Throughout the December 2012 admission and ongoing since that time, CRMC has failed to consistently provide Plaintiff Hill with a qualified sign language interpreter.

61. Throughout the December 2012 admission and ongoing since that time, Plaintiff Buttrum has been concerned CRMC did not obtain a complete medical history and may have been unaware of Plaintiff Buttrum's relevant medical history, medications, and symptoms.

62. During the December 2012 admission and subsequent treatments and admissions, Plaintiff Buttrum has experienced feelings of embarrassment, fear, anger, and frustration because he is unable to effectively communicate with CRMC health care providers.

63. During the December 2012 admission and subsequent treatments and admissions, Plaintiff Hill has experienced feelings of embarrassment, fear, anger, and frustration because he

was unable to effectively communicate with CRMC health care providers about Plaintiff Buttrum's medical condition.

64. Throughout the December 2012 admission and ongoing since that time, Plaintiff Buttrum felt left out, overwhelmed and stressed because he is unable to effectively communicate with CRMC health care providers.

65. Since the December 2012 admission and ongoing since that time, Plaintiff Buttrum has been treated at CRMC and Plaintiffs have not been provided with effective communication.

66. Since the December 2012 admission and ongoing since that time, Plaintiff Buttrum has been treated at CRMC and Plaintiffs have not been provided with a qualified sign language interpreter.

67. On or about February 23, 2014 (hereinafter February 23 visit), Plaintiff Buttrum received treatment for a sinus infection at CRMC emergency room.

68. During the February 23 visit, CRMC did not provide video remote interpreting services (hereinafter VRI) to Plaintiffs.

69. During the February 23 visit, CRMC did not provide an in person sign language interpreter to Plaintiffs.

70. During the February 23 visit, CRMC did not provide effective communication to Plaintiffs.

71. On or about April 17, 2014 (hereinafter April 17 visit), Plaintiff Buttrum was treated for his chronic obstructive pulmonary disease (COPD) and asthma by CRMC physician Dr. David Henson.

72. During the April 17 visit, CRMC failed to provide effective communication to Plaintiffs.

8

73. During the April 17 visit, CRMC did not provide an in person sign language interpreter for Plaintiffs.

74. During the April 17 visit, CRMC's use of VRI failed to provide effective communication.

75. Plaintiffs experienced frustration and embarrassment on or about April 17, 2014 due to CRMC's failure to provide effective communication.

76. On or about October 14, 2014 (hereinafter October 14 visit), Plaintiff Hill was treated by CRMC physician Dr. Emily Gentry.

77. Plaintiff Hill requested an in person sign language interpreter for the October 14 visit.

78. During the October 14 visit, the VRI froze approximately 4 times.

79. During the October 14th visit, the VRI exhibited trailing of the images of the interpreter's hands ("ghost hands").

80. Due to difficulties with VRI, Plaintiff Hill was unable to follow signs and had to struggle to try to figure out what was said.

81. During the December 2012 admission and ongoing since that time, CRMC's VRI is blurry.

82. During the December 2012 admission and ongoing since that time, CRMC's VRI is choppy.

83. During the December 2012 admission and ongoing since that time, CRMC's VRI skips/contains lags.

84. During the December 2012 visit and ongoing since that time, CRMC's VRI monitor is too small.

9

85.     During the December 2012 visit and ongoing since that time, CRMC's VRI monitor is too small to display the interpreter's face, arms, hands, and fingers regardless of his/her body position.

86.     During the December 2012 visit and ongoing since that time, CRMC's VRI has had audio problems.

87.     During the December 2012 visit and ongoing since that time, Plaintiffs have repeatedly experienced interpreters asking hearing CRMC staff to repeat themselves.

88.     During the December 2012 visit and ongoing since that time, CRMC's VRI   has not worked properly.

89.     During and subsequent to the December 2012 visit, CRMC did not have a dedicated line to the VRI.

90.     CRMC's VRI's slow speed and freezing of images prevents Plaintiffs from effectively communicating about their health treatment.

91.     CRMC's VRI's audio issues prevents Plaintiffs from effectively communicating with hearing health providers about their health treatment.

92.     CRMC's VRI prevents Plaintiffs from reading important facial expressions, tone, and body language.

93.     Plaintiff Buttrum does not receive effective communication about medical treatment with CRMC's VRI.

94.     Plaintiff Hill does not receive effective communication about medical treatment with VRI.

95.     Plaintiff Buttrum intends to return to CRMC in the future.

96.     Plaintiff Hill intends to return to CRMC in the future.

10

97. In the event Plaintiffs experience emergency health problems, Plaintiffs are at risk of being transported to CRMC by an ambulance service without regard to whether CRMC has taken steps to ensure provision of effective communication with Plaintiffs.

98. At all times relevant to the facts of this Complaint employees, agents, and staff of CRMC were acting as agents of Defendant.

99. At all times relevant to the facts of this Complaint, CRMC was acting as an agent of Defendant.

## CAUSES OF ACTION

100. Plaintiffs repeat the allegations of paragraphs 1 through 99 as fully set forth herein.

101. Defendant, through its procedures, practices, and conduct as described above, discriminated against Plaintiffs solely by reason of Plaintiffs' disabilities.

102. Defendant's discriminatory conduct against Plaintiffs was intentional and committed with reckless disregard of and with deliberate indifference to Plaintiffs' rights.

103. Due to Defendant's discriminatory patterns, procedures, practices, and conduct, Plaintiffs have suffered and continue to suffer irreparable loss and injury, including but not limited to emotional distress, stigma, exclusion from full participation in the benefits and services provided by Defendant, and receipt of benefits that are not equal to or as equally effective as the benefits provided by Defendant to persons without disabilities.

104. At all times from Plaintiff Buttrum's hospitalization and treatment which has been ongoing to the present, when health care providers at CRMC failed to consistently and promptly provide Plaintiffs with a qualified sign language interpreter as necessary for effective communication, they were acting as agents of Defendant.

11

105. Section 504 provides "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

106. 45 C.F.R. § 84.52(a) specifies "[i]n providing health ... services or benefits, a recipient may not, on the basis of [a disability] ... (2) [a]fford a qualified [person with a disability] an opportunity to receive benefits or services that is not equal to that offered [persons without disabilities]; (3) [p]rovide a qualified [person with a disability] with benefits and services that are not as effective ... as the benefits or services provided to others."[1]

107. Under Section 504, a qualified individual with a disability is any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 794.

108. Plaintiffs are qualified individuals with a disability and protected persons under Section 504 and implementing regulation 45 C.F.R. § 84.52.

109. Section 504 provides 'the term "program or activity" means all operations of— ... (3)(A) an entire corporation ... (ii) which is principally engaged in the business of providing ... health care.' 29 U.S.C. § 794(b).

110. Defendant's health services are programs and benefits receiving federal financial assistance.

111. Defendant is an entity subject to the non-discrimination requirements of Section 504 and implementing regulation 45 C.F.R. § 84.52.

---

[1] Substituted references to "disability" for references to "handicap" for purposes of consistency with the language of the ADA as amended.

112. The ADA and its implementing regulations define disability with respect to an individual as "… a physical or mental impairment that substantially limits one or more major life activities of such individual…." 42 U.S.C. § 12102; *see also* 28 C.F.R. § 35.104.

113. Plaintiffs are individuals with disabilities within the meaning of the ADA.

114. Deafness is a physical impairment within the meaning of the ADA.

115. Pursuant to the ADA "…[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

116. The ADA defines public entity as "any…instrumentality of a State…or local government." 42 U.S.C. § 12131(B).

117. Defendant is a public and governmental body established by a Private Act of the State of Tennessee legislature under T.C.A. § 7-57-102 and, as such, is and has been at all times mentioned herein a "public entity" within the meaning of the ADA.

118. Since Plaintiff Buttrum's December 2012 admission to CRMC and on numerous occasions since that admission, Defendant has subjected Plaintiffs to discrimination by reason of their disabilities.

119. Since Plaintiff Buttrum's December 2012 admission to CRMC and on numerous occasions since that admission, Defendant has excluded Plaintiffs from participation in and/or denied Plaintiffs the benefits of Defendant's programs, services, and/or activities at CRMC by reason of Plaintiffs' disabilities.

13

120. Since Plaintiff Buttrum's December 2012 admission and on numerous occasions since that admission, Defendant has provided VRI which does not meet the requirements of the ADA's implementing regulation at 28 CFR § 35.160(d).

121. At all times relevant to the facts of this Complaint employees, agents, and staff of CRMC were acting as agents of Defendant.

122. At all times relevant to the facts of this Complaint, CRMC was acting as an agent of Defendant.

Count I: Violation of Section 504 of the Rehabilitation Act and implementing regulation
45 C.F.R. § 84.52 by discriminating against Plaintiffs

123. Plaintiffs allege and incorporate by reference each and every allegation contained in paragraphs 1 through 122 above.

124. Section 504 provides "no otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be ... subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

125. 45 C.F.R. § 84.52(a) specifies "[i]n providing health ... services or benefits, a recipient may not, on the basis of [a disability] ... (2) [a]fford a qualified [person with a disability] an opportunity to receive benefits or services that is not equal to that offered [persons without disabilities]; (3) [p]rovide a qualified [person with a disability] with benefits and services that are not as effective ... as the benefits or services provided to others."[2]

126. 45 C.F.R. § 84.4(b)(2) states " ... benefits, and services ... must afford [persons with disabilities] equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."

---

[2] Substituted references to "disability" for references to "handicap" for purposes of consistency with the language of the ADA as amended.

14

127. At all times Plaintiff Buttrum sought and received health care at CRMC, Plaintiff Buttrum and Plaintiff Hill had a right to participate in Plaintiff Buttrum's medical treatment and effectively communicate about Plaintiff Buttrum's medical treatment by, among other things, receiving explanations of risks, benefits, and alternatives for each procedure; receiving instructions for each procedure; providing informed consent for each procedure; expressing any concerns or questions Plaintiffs had regarding each procedure; and having an opportunity to resolve any complications or concerns arising from each procedure.

128. Because (1) Plaintiffs' primary language is sign language, not written or spoken English, and (2) the communications in a medical setting are complex, Plaintiffs required the services of a qualified sign language interpreter to effectively communicate with health care providers regarding Plaintiffs' health care during the time Plaintiff Buttrum was a patient at CRMC from the December 2012 admission until the present.

129. Because CRMC did not consistently provide and continues not to consistently provide Plaintiffs with a qualified sign language interpreter, Plaintiffs did not receive effective communication for each procedure performed on Plaintiff Buttrum and could not effectively receive explanations of the risks, benefits, and alternatives to each procedure; effectively receive instructions for each procedure; provide informed consent for each procedure; express concerns or questions regarding each procedure; or have the opportunity to resolve concerns arising from each procedure.

130. Because CRMC failed and continues to fail to have an appropriate procedure in place for responding to use of the call button by a patient who is deaf, Defendant has provided Plaintiffs with benefits and services that are neither equal to nor effective as those provided to others without disabilities.

131. By limiting Plaintiffs' participation in Plaintiffs' health care, Defendant discriminated against Plaintiffs and subjected Plaintiffs to services and benefits that were not equal to, or as effective as, the services and benefits Defendant provides at CRMC to persons without hearing disabilities.

132. Defendant's discriminatory conduct against Plaintiffs was intentional and committed with reckless disregard of and with deliberate indifference to Plaintiffs' rights.

133. The violations in paragraphs 1 through 132 are continuous and ongoing.

Count II: Violation of Section 504 of the Rehabilitation Act and implementing regulation 45 C.F.R. § 84.52 by failure to provide appropriate auxiliary aids to Plaintiff

134. Plaintiffs allege and incorporate by reference each and every allegation contained in paragraphs 1 through 133 above.

135. Implementing regulation 45 C.F.R. § 84.52(d) mandates that a recipient of federal financial assistance employing fifteen persons or more "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service...."

136. Defendant employs more than 15 persons.

137. Because (1) Plaintiffs' primary language is sign language, not written or spoken English, and (2) the communications in a medical setting are complex, Plaintiffs did not and could not effectively communicate with CRMC health care providers during the time Plaintiff Buttrum was a patient at CRMC from the December 2012 admission and ongoing to the present.

138. Because Plaintiffs could not effectively communicate, Plaintiffs required the services of a qualified sign language interpreter to effectively communicate with health care providers regarding Plaintiff Buttrum's health care during the time Plaintiff Buttrum was a patient at CRMC from the December 2012 admission and ongoing to the present.

16

139. By failing to provide Plaintiffs with the services of a qualified sign language interpreter, Defendant failed to provide Plaintiffs with appropriate auxiliary aids/services necessary to give Plaintiffs an equal opportunity to benefit from health care services provided at CRMC from the December 2012 admission and ongoing to the present.

140. Defendant's discriminatory conduct against Plaintiffs was intentional and committed with reckless disregard of and deliberate indifference to Plaintiffs' rights.

141. The violations in paragraphs 1 through 140 are continuous and ongoing.

<u>Count III: Violation of Section 504 of the Rehabilitation Act and implementing regulation 45 C.F.R. § 84.52 by failure to establish a procedure for effective communication with persons with hearing disabilities requiring emergency health care</u>

142. Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 141 above.

143. Implementing regulation 45 C.F.R. § 84.52(c) mandates that a "recipient hospital [of Federal financial assistance] that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care."

144. From the time Plaintiffs arrived at CRMC's emergency department to the time Plaintiff Buttrum was admitted for inpatient care, Defendant did not have an established procedure for providing effective communication to deaf persons seeking emergency medical care.

145. Emergency department health care providers at CRMC relied on Plaintiff Buttrum's companion and assistant, Plaintiff Hill, to communicate with Plaintiff.

146. Defendant's failure to consistently provide Plaintiffs with a qualified sign language interpreter when Plaintiff Buttrum sought emergency medical care demonstrates that Defendant

17

did not have an established pattern, practice, or procedure for ensuring effective communication with deaf persons seeking emergency medical care.

147. By failing to have an established procedure for ensuring effective communication with deaf persons seeking emergency medical care, Defendant violated Section 504 and implementing regulation 45 C.F.R. § 84.52(c).

148. Defendant's discriminatory conduct against Plaintiffs was intentional and committed with reckless disregard of and deliberate indifference to Plaintiffs' rights.

149. The violations in paragraphs 1 through 148 are continuous and ongoing.

<u>Count IV: Violation of the ADA by Discriminating Against Plaintiffs</u>

150. Plaintiffs allege and incorporate by reference each and every allegation contained in paragraphs 1 through 149 above.

151. Pursuant to the ADA "…no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

152. The ADA's implementing regulations define qualified interpreter as "an interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters…." 28 CFR § 35.104

153. By failing to provide qualified sign language interpreters for Plaintiffs, Defendant has excluded Plaintiffs from participation in and/or denied Plaintiffs the benefits of Defendant's programs, services, and/or activities at CRMC by reason of Plaintiffs' disabilities.

154. By failing to provide qualified sign language interpreters for Plaintiffs, Defendant has subjected Plaintiffs to discrimination by reason of their disabilities.

155. By failing to have an appropriate procedure in place for responding to use of the call button by a patient who is deaf, Defendant has excluded Plaintiffs from participation in and/or denied Plaintiffs the benefits of Defendants' programs, services and/or activities at CRMC by reason of Plaintiffs' disabilities.

156. By failing to have an appropriate procedure in place for responding to use of the call button by a patient who is deaf, Defendant has subjected Plaintiff to discrimination by reason of their disabilities.

157. The violations in paragraphs 1 through 156 are continuous and ongoing.

<u>Count V: Violation of ADA and Implementing Regulations by Failure<br>to Provide Auxiliary Aids and Services</u>

158. Plaintiffs allege and incorporate by reference each and every allegation contained in paragraphs 1 through 157 above.

159. The implementing regulations for the ADA state, "A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are <u>as effective as</u> communications with others." 28 CFR § 35.160(a)(1) (emphasis added).

160. The implementing regulations for the ADA state, "A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 CFR § 35.160(b)(1).

161. The implementing regulations for the ADA state, "The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 CFR § 35.160(b)(2).

162. By repeatedly failing to provide qualified sign language interpreters for Plaintiffs, Defendant has failed to afford Plaintiffs an equal opportunity to participate in, and enjoy the benefits of, the services, programs, and/or activities of Defendant at CRMC.

163. By repeatedly refusing to provide qualified in person sign language interpreters for Plaintiffs, Defendant has failed to give primary consideration to the requests of Plaintiffs.

164. By repeatedly refusing to provide qualified in person sign language interpreters for Plaintiffs, Defendant has failed to provide auxiliary aids/services in an accessible format and timely manner.

165. By repeatedly providing VRI that does not work, Defendant has failed to give primary consideration to the requests of Plaintiffs.

166. By repeatedly providing VRI that does not work, Defendant has failed to provide auxiliary aids/services in an accessible format and timely manner.

167. The violations in Paragraphs 1 through 166 are continuous and ongoing.

168. Plaintiff alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 167 above.

169. The ADA's implementing regulations establish specific requirements for using VRI services to provide a qualified sign language interpreter. "A public entity that chooses to provide qualified interpreters via VRI services shall ensure that it provides-- (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 CFR § 35.160(d).

170. Defendant has repeatedly failed to ensure VRI services at CRMC provide real-time, full motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication.

171. When attempting to use the VRI services at CRMC, Plaintiffs have repeatedly experienced lags, choppy images, blurry images, and grainy images, and/or irregular pauses in communication.

172. Defendant has repeatedly failed to ensure VRI services at CRMC provide a sharply delineated image that is large enough to display the interpreter's face, arms, hands and fingers, and Plaintiffs' face, arms, hands, and fingers, regardless of body position.

173. When attempting to use the VRI services at CRMC, Plaintiffs have repeatedly experienced blurry images.

174. Plaintiffs have repeatedly experienced difficulty seeing the interpreter's face, arms, hands, and fingers when attempting to use the VRI services at CRMC.

175. Defendant has repeatedly failed to ensure VRI services at CRMC provide a clear audible transmission of voices.

176. When attempting to use the VRI services at CRMC, Plaintiffs have repeatedly experienced interpreters asking hearing CRMC staff to repeat themselves.

177. Defendant has repeatedly failed to provide adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

178. When attempting to use the VRI services at CRMC, Plaintiffs have repeatedly encountered staff members who have not received adequate training about set up and/or operation of the VRI.

179. When attempting to use the VRI services at CRMC, Plaintiffs have encountered delays in set up and operation of the VRI because staff members have not received adequate training.

180. The violations in paragraphs 1 through 179 are continuous and ongoing.

22

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiffs request that this Court:

1.      Declare the actions of Defendant pled herein to be in violation of the ADA and Section 504 and their implementing regulations.

2.      Order Defendant, its members, partners, agents, employees, successors, and transferees to cease discriminating against Plaintiffs and all similarly situated persons solely by reason of disability in the provision of health care services.

3.      Permanently enjoin Defendant, its agents, employees, successors, and transferees from discriminating on the basis of disability against any person with a disability in violation of the ADA and Section 504 and their implementing regulations.

4.      Order Defendant to confer with Plaintiffs' counsel to develop a nondiscrimination policy and detailed procedure for ensuring effective communication with people with disabilities and to obtain approval of Plaintiff's counsel prior to implementing such policy and procedure. Such policy and procedure shall include but not be limited to provision of qualified sign language interpreters to patients/companions with disabilities and responding to call buttons used by patients/companions with disabilities.

5.      Order Defendant to confer with Plaintiffs' counsel to develop an appropriate procedure to ensure effective communication with persons with disabilities requiring emergency health services at any of Defendant's hospitals and to obtain approval of Plaintiffs' counsel prior to implementing such procedure.

6.      Order Defendant to prominently post signage about the availability of free qualified sign language interpreters throughout the emergency department, hospital, and doctor's offices at CRMC.

7. Order Defendant to provide in person sign language interpreters for Plaintiffs for all inpatient and outpatient visits to CRMC including but not limited to medical appointments, treatments, visits to the emergency department and hospitalizations.

8. Order Defendant to provide to Plaintiffs VRI that complies with 28 CFR § 35.160(d) for all hospitalizations and treatment at CRMC until an in person sign language interpreter arrives.

9. Award Plaintiff compensatory damages in an amount sufficient to compensate Plaintiffs for Plaintiffs' injuries, including but not limited to emotional distress, stigma, and violation of Plaintiffs' civil rights, as a result of Defendant's discriminatory conduct.

10. Award Plaintiffs all fees and costs of this lawsuit, including litigation expenses, out-of-pocket expenses, and reasonable attorneys' fees in accordance with all applicable provisions of law, including but not limited to the provisions of 42 U.S.C § 12205 and 29 U.S.C § 794A(b).

11. Order Defendant to timely provide for all existing and newly hired staff mandatory training on ADA and Section 504 compliance including but not limited to requirements and procedures for use of qualified sign language interpreters and disability sensitivity including information about deaf culture.

12. Order Defendant to provide to attorneys for Plaintiffs an annual written report confirming receipt of the training referenced above by all staff at all facilities operated by Defendant in Tennessee. This report should be provided for a period of five years from the date of this Order with the first report provided no later than one year of the date of this Order.

13. Order Defendant to provide to attorneys for Plaintiffs an annual written report listing the number of patients who requested a qualified sign language interpreter and the number

of patients who were provided a qualified sign language interpreter at all Defendant's facilities in Tennessee. This report should be provided for a period of five years from the date of this Order with the first report provided no later than one year of the date of this Order.

14.    Order Defendant to pay reasonable attorneys' fees to Plaintiffs' attorneys for future monitoring of compliance with remedies listed herein.

15.    Order such other and further relief as the Court may deem just and proper.

Date:  November 21, 2014                    Respectfully Submitted,

Sherry A. Wilds (BPR #021756)
Martha M. Lafferty (BPR #019817)
Disability Rights Tennessee
2 International Plaza STE 827
Nashville, TN 37217
(615) 298-1080

25